UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK

In re:                              :
                                         Docket #1:22-cr-00192-
 UNITED STATES OF AMERICA,          : JSR-8

                    Plaintiff,      :

  - against -                       :

 RESTITUYO, MALVIN,                 : New York, New York
                                      March 31, 2022
                    Defendant.      :
                                      ARRAIGNMENT
----------------------------------- : AND PRESENTMENT

                      PROCEEDINGS BEFORE
                 THE HONORABLE SARAH L. CAVE,
               UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:          UNITED STATES ATTORNEY'S OFFICE
                        BY:  DOMINIC A. GENTILE, ESQ.
                             ADAM HOBSON, ESQ.
                        One St. Andrew's Plaza
                        New York, New York 10007

For Defendant:          FEDERAL DEFENDERS OF NEW YORK INC.
                        BY:  JONATHAN ANDREW MARVINNY, ESQ.
                        52 Duane Street - 10th Floor
                        New York, New York 10007

Interpreter Present




Transcription Service:  Carole Ludwig, *Transcription Services*
                        155 East Fourth Street #3C
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Email:  Transcription420@aol.com

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service

<u>**INDEX**</u>

<u>**E X A M I N A T I O N S**</u>

| <u>**Witness**</u> | <u>**Direct**</u> | <u>**Cross**</u> | <u>**Re-Direct**</u> | <u>**Re-Cross**</u> |
|---|---|---|---|---|
| None | | | | |

<u>**E X H I B I T S**</u>

| <u>**Exhibit Number**</u> | <u>**Description**</u> | <u>**ID**</u> | <u>**In**</u> | <u>**Voir Dire**</u> |
|---|---|---|---|---|
| None | | | | |

```
 1                         PROCEEDINGS                    3

 2              THE CLERK:  Your Honor, this is in the matter of

 3   United States versus Malvin Restituyo, 22-cr-192.

 4              Counsel, please state your appearance for the

 5   record.

 6              MR. DOMINIC A. GENTILE:  Good afternoon, your

 7   Honor.  Dominic Gentile and Adam Hobson for the United States.

 8   Seated at counsel table with us is Detective Jose Lisardo of

 9   the NYPD.

10              HONORABLE SARAH L. CAVE (THE COURT):  Okay.  Good

11   afternoon again.

12              MR. JONATHAN A. MARVINNY:  Good afternoon, your

13   Honor.  Federal Defenders of New York by Jonathan Marvinny.

14   I'm appearing for my colleague, Clay Kaminsky.

15              THE COURT:  Okay.  Good afternoon.  Good

16   afternoon, Mr. Restituyo.  Are you able to understand me

17   through the interpreter, sir?

18              MR. MALVIN RESTITUYO (through interpreter) (THE

19   DEFENDANT):  Too loud.

20              THE COURT:  Too loud.  Okay.  Do you want to try

21   the other set that's on the table there?

22              THE INTERPRETER:  No, the other one isn't working.

23   We just have to turn it down, your Honor.

24              THE COURT:  Okay.  Thank you.

25              All right, I'm Magistrate Judge Cave.  Are you
```

```
 1                          PROCEEDINGS              4
```

 2 able to understand me through the interpreter, sir?

 3           THE DEFENDANT:  Yes.

 4           THE COURT:  Okay.  Very good.

 5           May I have the date and time of arrest, please,

 6 Mr. Gentile?

 7           MR. GENTILE:  Your Honor, the defendant was

 8 arrested this morning at approximately five-fifteen a.m.

 9           THE COURT:  Thank you.  Okay, Mr. Restituyo,

10 you're here because you've been charged with certain crimes

11 in an indictment.  The purpose of today's proceeding is to

12 advise you of certain rights that you have; inform you of

13 the charges against you; consider whether counsel should be

14 appointed for you; and decide under what conditions, if

15 any, you'll be released pending trial.

16           You have the right to remain silent.  You're not

17 required to make any statements.  Even if you've already

18 made statements to the authorities, you do not need to make

19 any further statements.  Any statements you do make can be

20 used against you.

21           You have the right to be released, either with or

22 without conditions, pending trial, unless I find that there

23 are no conditions that would reasonably assure your

24 presence at future court appearances and the safety of the

25 community.

```
 1                          PROCEEDINGS              5

 2              If you're not a US citizen, you have the right to

 3    request that a government attorney or a law enforcement

 4    official notify an officer from your country that you've

 5    been arrested.  In some cases, a treaty or other agreement

 6    may require the government to give that notice whether you

 7    request it or not.

 8              You have the right to be represented by an

 9    attorney during all court proceedings, including this one,

10    and during all questioning by the authorities.  You have

11    the right to hire your own attorney.  If you cannot afford

12    an attorney, I will appoint one today to represent you.

13              Do you understand the rights I've just described,

14    Mr. Restituyo?

15              THE DEFENDANT:  Yes.

16              THE COURT:  Okay.  I understand you wish for me to

17    appoint counsel.  I have before me a Financial Affidavit

18    that you've signed under penalty of perjury.  Please be

19    aware you can be charged with perjury for any false

20    statements in the affidavit.  And you must tell the Court

21    if there's any change in your financial status.

22              Based on the statements in your Financial

23    Affidavit, I will approve the appointment of counsel.  And

24    Mr. Marvinny and his colleagues will represent you.

25              The grand jury of this district has returned an
```

```
 1                         PROCEEDINGS              6
 2   indictment against you.  The indictment charges in Count
 3   One that, from 2017 to the present, you and others
 4   knowingly conspired to engage in a pattern of racketeering
 5   in violation of, among other statutes, 18 U.S.C. § 1962(d).
 6              Count Eight of the indictment charges that, on or
 7   about June 23, 2019, you participated in the shooting of
 8   rival gang members in the vicinity of East 181st Street and
 9   Grand Concourse in violation of several New York State
10   Penal Law sections and that that is a violation of 18
11   U.S.C. §§ 1959(a)(5), 1959(a)(3) and (2).
12              Count Nine of the indictment charges that, on or
13   about June 23, 2019, in connection with the crime that I
14   just described in Count Eight of the indictment, you
15   knowingly used and carried a firearm and in furtherance of
16   that crime did possess a firearm and aided and abetted the
17   used carrying and possession of a firearm that was
18   brandished and discharged, in violation of  18 U.S.C.
19   §§ 924(c)(1)(A)(ii)(iii) and (2).
20              Mr. Gentile, did I get all the counts of the
21   indictment that relate to Mr. Restituyo?
22              MR. GENTILE:  Yes.  Yes, your Honor, you did.
23   Thank you.
24              Mr. Marvinny, do you have a copy of the
25   indictment?
```

```
1                         PROCEEDINGS                  7

2              MR. MARVINNY:  Yes, your Honor.

3              THE COURT:  Have you reviewed it with

4    Mr. Restituyo?

5              MR. MARVINNY:  Yes, we have, your Honor.  We waive

6    its public reading.

7              THE COURT:  Okay.  And when you reviewed it, did

8    you do so with the aid of an interpreter?

9              MR. MARVINNY:  Yes, your Honor.

10             THE COURT:  Okay.  Is he prepared to enter a plea

11   this morning?

12             MR. MARVINNY:  Not guilty, please.

13             THE COURT:  The Court will enter a plea of not

14   guilty on your behalf, Mr. Restituyo.

15             All right, what is the government's position as to

16   bail, detention or release?

17             MR. GENTILE:  Your Honor, the government is

18   prepared to argue for detention?

19             THE COURT:  Okay.  And, Mr. Marvinny, are you

20   making an application?

21             MR. MARVINNY:  That's right, your Honor.

22             THE COURT:  All right, let me just make some

23   preliminary statements, Mr. Gentile, and I'll let you make

24   your argument.

25             The government, Mr. Restituyo, is seeking
```

1                              PROCEEDINGS                    8

2    detention of you in this case.  Am I right in informing

3    Mr. Gentile, because it is the nature of the charges

4    against him, so therefore, §3142(f)(1), is that --

5              MR. GENTILE:  That's correct, your Honor.  He's

6    being charged --

7              THE COURT:  And that there's a presumption that

8    applies?

9              MR. GENTILE:  Exactly, yes.

10             THE COURT:  So I'm required under the law to

11   release you, Mr. Restituyo, either with or without

12   conditions imposed, unless I determine that there are no

13   conditions that will reasonably assure your appearance in

14   court as required and the safety of the community.  In

15   making a bail determination, I'm required to consider the

16   nature and circumstances of the offense charged, the weight

17   of the evidence against you, your history and

18   characteristics, if you were on probation, parole or other

19   release when you allegedly committed the crimes charged in

20   the indictment and the nature and seriousness of the danger

21   to any person or the community posed by your release.

22             In this case, the law establishes a rebuttable

23   presumption in favor of detention because of the crimes

24   with which you've been charged, including a crime of

25   violence.  The presumption is, however, rebuttable, and the

```
 1                         PROCEEDINGS                    9
 2  government bears the burden of establishing by clear and
 3  convincing evidence that you're a danger to the community
 4  or establishing by a preponderance of the evidence that
 5  you're a flight risk.
 6             Mr. Gentile, would you like to make your argument
 7  now?
 8             MR. GENTILE:  Thank you, Judge.
 9             Your Honor, all of the defendants who are arrested
10  today are being charged with certain racketeering acts,
11  including this defendant.  And all but one of the
12  defendants is being charged with being part of a
13  racketeering conspiracy, including this defendant.  So what
14  I'd like to do is just to provide the Court with a brief
15  background of the enterprise to give you some context of
16  the charges that the defendant faces.
17             So all of the defendants are either members or
18  associates of a violent street gang that goes by the name
19  of the Shooting Boys.  The Shooting Boys gang is a criminal
20  organization based in the University Heights section of the
21  Bronx.  And since at least 2017 or '18, gang members have
22  used guns to commit numerous acts of violence against
23  members of rival gangs throughout the Bronx.  The Shooting
24  Boys were originally attached to the larger Trinitarios
25  gang, specifically, the Sunset chapter of the Trinitarios.
```

1
2   But they decided to break off and form their own gang.

3   That was in or about 2018.  And the defendant's co-

4   defendant, Andrew Done, who has not been arrested today, is

5   the recognized leader of that gang.  After the Shooting

6   Boys broke off from the Trinitarios, an ongoing battle

7   between the two gangs ensued, and the end result was a

8   series of violent acts and back-and-forth retaliation

9   between the Shooting Boys and the Trinitarios.  Eventually,

10  the Shooting Boys began to retaliate against other gangs

11  affiliated with the Trinitarios, and the acts of violence

12  charged in the indictment arise from that ongoing battle.

13          Their main source of income was from drug-dealing

14  and robberies.  And that's where this defendant comes into

15  play.  We don't allege that this defendant is a member of

16  the gang, but we do allege and we're prepared to prove that

17  he was an associate of the gang who worked closely with

18  them in a number of criminal enterprises or criminal

19  activities, including robberies, robberies of motorcycles,

20  robberies of electric bikes, and including the shooting

21  that forms the basis of Count Eight and Count Nine.

22          The government's prepared to argue for detention

23  based on both danger to the community and risk of flight.

24  And I'll start off with danger to the community first,

25  Judge.  The defendant's charged with participating in the

```
 1                          PROCEEDINGS                  11
 2    attempted murder of two individuals he believed were rival
 3    gang members.  In the early-morning hours of June 23, 2019,
 4    the defendant, along with his co-defendants, Andrew Done --
 5    co-defendant Andrew Done and two other members of the gang
 6    with which he was associated, went hunting for rival gang
 7    members to shoot.  The defendant and his accomplices were
 8    riding on motorized scooters or motorcycles, however you
 9    want to characterize it -- they were small motorcycles.
10    They approached two other individuals on a motorcycle.  And
11    when they came upon the victims, the defendant's co-
12    defendant, Andrew Done, shot both of them.  Now, although
13    the defendant wasn't the actual shooter in this case, the
14    government's prepared to prove that it was the defendant
15    who provided Andrew Done with the firearm that he used in
16    the shooting and that the defendant knew that Andrew Done
17    was going to use the gun to do a shooting.
18              The government's also prepared to prove at trial
19    that the defendant has a long association with the Shooting
20    Boys and has committed other crimes with them, as I
21    mentioned before, robberies of motorcycles and e-bikes; and
22    that he kept a firearm at his disposal in the basement
23    where he and other members of the gang met and planned the
24    June 23rd shooting.
25              With respect to risk of flight, Judge, the
```

1                            PROCEEDINGS                    12

2   Pretrial Services Report doesn't reflect his prior arrests

3   because they're sealed, but the NYPD has records of three

4   prior arrests for minor offenses, all marijuana related.

5   However, in all three of those offenses the defendant

6   failed to appear, causing the state court to issue bench

7   warrants for him.  In the instant case here, the defendant

8   is facing a maximum penalty of life in prison and a

9   mandatory minimum of ten years that must run consecutively

10  to any other sentence that's imposed.  The potential

11  maximum mandatory minimum sentences provide an extremely

12  strong incentive for the defendant to flee, and it's not a

13  stretch to assume that the defendant who failed to appear

14  for very minor offenses such as marijuana offenses would

15  not fail to appear in this case.

16            And the weight of the evidence here is strong,

17  Judge.  We have testimony from multiple cooperating

18  witnesses, security camera video and the defendant's own

19  Mirandized statements to law enforcement back in 2019

20  admitting to being with his co-defendant Done and the other

21  gang members when that shooting occurred and admitting to

22  knowing that Andrew Done had a firearm on him and that he

23  intended to use that firearm in shooting rival gang

24  members.

25            I would point out to the Court, though, that this

```
 1                         PROCEEDINGS              13
 2   was the second statement the defendant made to the police
 3   after initially denying having anything to do with this
 4   incident or having any knowledge that a firearm was used in
 5   the incident.  The cooperating witnesses are prepared to
 6   testify about the defendant's extensive involvement in the
 7   gang and specifically his role with respect to robberies of
 8   motorcycles and electric bikes.
 9             And for those reasons, your Honor, we do not
10   believe that the defendant can overcome the presumption
11   that there are no conditions that will assure his
12   appearance in court or the safety of the community.
13             THE COURT:  Can I ask you, Mr. Gentile, when you
14   say that he was an associate but not a member, how are you
15   drawing that distinction?
16             MR. GENTILE:  That distinction is nebulous, to say
17   the least.  He was with the Shooting Boys quite frequently,
18   almost as much as a regular member would be.  But I think
19   it has more to do with recognition.  So when a gang member
20   recognizes you as one of the other gang members, I think
21   that is their informal way of adopting you as a gang
22   member.  Here he was not recognized as a gang member.
23             THE COURT:  Okay.  And with respect to the
24   shooting incident that relates to Counts Eight and Nine,
25   the government alleges that Mr. Restituyo supplied Mr. Done
```

1                          PROCEEDINGS                    14

2   with the firearm that was used in that shooting; and if so,

3   what's the basis for that belief, to the extent you can

4   tell me?

5              MR. GENTILE:  That's the cooperating witness's

6   statements to us.

7              THE COURT:  Okay.

8              MR. GENTILE:  And I would also point out one other

9   thing, Judge, that I think is relevant to this argument is

10  that the defendant was apprehended today in an apartment

11  that law enforcement believed his co-defendant,

12  Mr. Almonte, resided in.  They actually went to that

13  apartment to apprehend his co-defendant, not him.

14             THE COURT:  Okay.

15             MR. GENTILE:  So he is still associating with the

16  gang members as recently as today.

17             THE COURT:  Okay.  Was there anything found in the

18  course of that search?

19             MR. GENTILE:  No, your Honor.

20             THE COURT:  Okay.  No firearms or anything --

21             MR. GENTILE:  As a result of today's --

22             THE COURT:  When Mr. Restituyo was arrested, were

23  there any guns or drug-trafficking evidence found around

24  him?

25             MR. GENTILE:  There was nothing, there was no

```
 1                         PROCEEDINGS              15
```

 2   evidence found; but we didn't search the apartment.  We

 3   didn't have a search warrant.  All we executed was an

 4   arrest warrant.

 5             THE COURT:  Okay.  Mr. Restituyo didn't have a gun

 6   or other weapon on him, though, when he was arrested,

 7   right?

 8             MR. GENTILE:  When he was arrested inside the

 9   residence, no, he did not.

10             THE COURT:  Okay.  Thank you, Mr. Gentile.

11             Mr. Marvinny?

12             MR. MARVINNY:  Thank you, your Honor.  Before I

13   begin, can I just confirm which apartment Mr. Restituyo was

14   arrested at today?  Just the street would be sufficient.

15             THE COURT:  Okay.

16             MR. GENTILE:  Your Honor, the residence at which

17   he was arrested today is 459 East 167th Street,

18   Apartment 2A, in the Bronx.

19             THE COURT:  Okay.  Thank you.

20             MR. MARVINNY:  Thank you.

21             Your Honor, I am asking the Court to release

22   Mr. Restituyo on a package that is essentially identical to

23   the package recommended by Pretrial Services in their

24   recommendation that the Court release Mr. Restituyo.  I say

25   it's essentially identical, only in that Pretrial Services

1

2   suggests three financially responsible people cosign the

3   bond; I'm asking the Court to impose two financially

4   responsible people.  I believe Mr. Restituyo's partner with

5   whom he lives in the apartment where he apparently was

6   arrested today and Mr. Restituyo's mother could be the

7   cosigners.

8          The package -- I know the Court can see it on page

9   four of the report -- but the package also recommends home

10  detention with location monitoring and a host of other

11  restrictions that we believe are appropriate.  So it's a

12  bail package with teeth, it's got some real merit, and it's

13  the package Pretrial is recommending.

14         So, your Honor, there's insufficient evidence, I

15  contend, to find that Mr. Restituyo is such a risk of

16  flight or such a danger that there are no conditions that

17  the Court can impose.  On the government's own telling,

18  Mr. Restituyo is not a member of the gang; he's an

19  associate.  At most, he is accused certainly of

20  racketeering and of a crime of violence and a serious one;

21  but this is the 2019 shooting.  The government admits that

22  Mr. Restituyo was not the actual shooter, he was not

23  involved in violence in any way on that day.  They say that

24  Mr. Restituyo was on a scooter next to the shooter while it

25  happened.  That's it.

```
 1                         PROCEEDINGS              17
```

```
 2              They then allude to supposedly other robberies
 3    that Mr. Restituyo's committed.  But that's it.  There's no
 4    date on those robberies, there's no explanation of those
 5    robberies.  I won't presume that the government is
 6    conceding that the government is conceding that
 7    Mr. Restituyo hasn't committed any crimes since 2019, but
 8    the crime he's charged with is old at this point.  It's
 9    almost three full years old.  Mr. Restituyo has not gone
10    anywhere; he has remained in New York City.
```

```
11              And so, your Honor, the conduct is old.  And
12    Mr. Restituyo is not such a hardened criminal that he has
13    any criminal history whatsoever.  He has no record.  He has
14    maybe a few prior arrests that the government referred to,
15    but those are sealed.  I don't have the benefit of seeing
16    those records to contest the allegation that Mr. Restituyo
17    didn't come to court.  I think it's a bit unfair to even
18    consider sealed arrests at a bail argument like this, not
19    only because the defense has no chance to look at the
20    records or make arguments about them or contest them --
21    they're sealed for a reason -- but the salient fact is that
22    Mr. Restituyo has not even a misdemeanor conviction on his
23    record, much less a felony.
```

```
24              On the other side, he has deep ties to the New
25    York City area.  He is in this country legally; he's a
```

1                            PROCEEDINGS                18

2  lawful permanent resident, as is his partner, as are his

3  parents.  He has two-year-old child with his partner, who

4  is a US citizen, born here.  So he has deep family ties.

5  Mr. Restituyo has been here in this country since

6  approximately 2007 -- that's some 15 years -- again,

7  without a criminal record; hasn't left the country since.

8  He hasn't returned to the Dominican Republic, which is the

9  place of his birth.  He hasn't gone on a vacation; he

10 hasn't left.  So there's really no basis to conclude that

11 he's a flight risk.

12           What the government has here really is the

13 presumption and the nature of the offense and the charges.

14 But that's really it.  There's nothing else independently

15 to suggest that Mr. Restituyo isn't going to come to court

16 when he's supposed to or that he poses such a danger, you

17 know, someone who there's not really an allegation of any

18 crimes since 2019.

19           So, on those facts, as Pretrial Services

20 recognized, there are some conditions the Court can set.

21 And so I'll end where I began, which is that this package

22 is home detention with electronic monitoring.  It's about

23 as serious a package as it gets.  Mr. Restituyo can find

24 two financially responsible people.  He should be given the

25 chance to show good faith and come back to court when he's

```
 1                          PROCEEDINGS                    19
 2   supposed to.  There's no reason to think he won't.
 3              THE COURT:  He's not employed, correct?
 4              MR. MARVINNY:  He's not employed.  He had been
 5   employed until four or five months ago, which is, by the
 6   way, when he moved residences in with his partner at the
 7   address that was just placed on the record.  There were
 8   some extenuating circumstances around why Mr. Restituyo had
 9   to move.  He had essentially lived at the same address with
10   his parents for the first 14, 15 years he was in this
11   country.  I think he has a grand total of now two, at most
12   three, addresses in the Bronx since he's moved here.  At
13   the same time he made that move in with his partner, he had
14   to stop working for the same reasons, the same extenuating
15   circumstances.  But prior to that, he had very faithfully
16   done deliveries, he was driving for Uber, he was delivering
17   food for Uber Eats.  He hasn't been able to maintain that
18   position for the last several months, but up until that
19   point he had a fairly regular work history.
20              THE COURT:  Okay.  Do you know how he supports
21   himself?
22              MR. MARVINNY:  Well, at this point, his partner
23   helps him.  He's got a little bit of money from when he was
24   working.  And as I indicated in the financial form,
25   Mr. Restituyo occasionally indulges in a side-business
```

1                               PROCEEDINGS                    20

2   where he buys and sells cars after fixing them up.  So he's

3   earned a little bit of income in 2022 from that side-

4   business.  That's mainly how he's getting by.

5              But he also, your Honor, he doesn't pay rent, he

6   doesn't pay for many expenses because he's living with his

7   partner and her mother.

8              THE COURT:  Right.  So does he go anywhere during

9   the day, largely?

10             MR. MARVINNY:  Not much, your Honor.

11             THE COURT:  He doesn't really need to.

12             MR. MARVINNY:  I asked him those very questions.

13  There's not much going on in his life right now.  He can

14  certainly abide by the home detention conditions.

15             THE COURT:  Okay.  All right.  And do you know if

16  his mother is employed?

17             MR. MARVINNY:  His mother is employed.  His mother

18  is a home health attendant, your Honor.  She is currently

19  present in the country and could be a cosigner.  His father

20  also could be a cosigner.  He is a cashier at a

21  supermarket.  He happens to be abroad right now.

22             THE COURT:  Okay.  Abroad permanently or just for

23  a --

24             MR. MARVINNY:  No, no, just on a one-month trip.

25             THE COURT:  Okay.  Thank you.

```
 1                          PROCEEDINGS              21

 2            Mr. Gentile?

 3            MR. GENTILE:  Your Honor, I just want to point out

 4   that -- I know defense counsel's relying on Pretrial

 5   Services' recommendation.  But the pretrial services didn't

 6   have the benefit of all the details I just provided the

 7   Court with respect to this defendant's role within the

 8   charged offenses.

 9            I also want to point out that the additional

10   evidence the government has -- and it's extensive -- but

11   the additional evidence the government has with respect to

12   the defendant's participation in this shooting is security

13   camera video.  We have security camera video of the

14   defendant in the basement with his co-defendants, we have

15   security camera video of him getting on the motorcycle,

16   traveling in the direction of the shooting.  We have

17   security camera video of him on a bike on the Grand

18   Concourse.  We do not have video of the actual shooting,

19   but we have video of those same individuals coming back to

20   the location and putting the motorcycles back into the

21   basement area, where the defendant controlled and where the

22   defendant kept the firearm that he provided to Mr. Done to

23   use in the shooting.

24            THE COURT:  I'm sorry, the gun was kept where, in

25   the basement?
```

1                          PROCEEDINGS            22

2              MR. GENTILE:  In the basement area where these

3    individuals met to plan the shooting that the defendant had

4    control over and allowed the gang members to use as a

5    meeting place.

6              THE COURT:  Is the basement that you're referring

7    to, is that at this 167th Street address?

8              MR. GENTILE:  325 East 167th Street -- 76th

9    Street -- 176th Street.

10             THE COURT:  So not where he was arrested or where

11   he resides?

12             MR. GENTILE:  No, not where he was arrested or

13   where he resides.

14             THE COURT:  Okay.  Thank you.  Thank you,

15   Mr. Gentile.

16             Just give me a moment.

17             Sorry, one other question, Mr. Gentile.  In terms

18   of communications, Mr. Restituyo's communications, does the

19   government have evidence that, for example, recently he's

20   been communicating or been on social media with other co-

21   defendants or members of the Shooting Boys?

22             MR. GENTILE:  So, aside from the obvious fact that

23   he was living in the apartment of one of the Shooting Boys

24   and living with the sister of one of the Shooting Boys, who

25   herself is considered or recognized as a member of the

PROCEEDINGS                    23

gang, I think that's pretty strong evidence that he's still

at the very least associating with that gang.

          THE COURT:  Right.

          MR. GENTILE:  But with respect to his actual

participation in gang activities, our evidence ends

basically with when the cooperating witnesses came forward.

          THE COURT:  I see.

          MR. GENTILE:  So we do not have evidence of more

recent conduct, only because the cooperating witnesses that

we have are no longer in contact with the gang members.

          THE COURT:  I see.  And when did those cooperating

witnesses come forward, or about how long ago?

          MR. GENTILE:  It's more than a month.  It's within

a year.

          THE COURT:  Okay.

          MR. GENTILE:  But I would also note, too,

Judge -- and I want to bring this up because this will be part

of our discovery -- the defendant was captured on jail calls

with individuals who were incarcerated and other gang

members, other Shooting Boyss, on jail calls, speaking

about -- there was at least one jail call where he's speaking

about drugs, even though we don't allege that he was part of

the narcotics conspiracy.  But he was speaking with other

Shooting Boys on the jail calls, talking about things like

```
 1                        PROCEEDINGS              24

 2   drugs and getting people in the jail drugs.

 3              THE COURT:  Okay.  Your colleague wants to tell you

 4   something.

 5              And then I'll let you respond, Mr. Marvinny.

 6              MR. MARVINNY:  Thank you.

 7              THE COURT:  Go ahead.

 8              MR. GENTILE:  So my colleague wants me to point

 9   out, and rightfully so, is that the defendant's girlfriend

10   is the sister of one of our gang members.

11              THE COURT:  Okay.  But she herself isn't charged?

12              MR. GENTILE:  She is not being charged, not today.

13              THE COURT:  Okay.  Go ahead, Mr. Marvinny.

14              MR. MARVINNY:  Your Honor, I was going to point

15   that fact out.  The sister, Mr. Restituyo's partner, is the

16   mother of his two-year-old child.  And they're in a

17   relationship.

18              You know, in some ways, the government's

19   allegations get vaguer and vaguer the more I hear them.  I

20   mean, Mr. Restituyo is on some calls talking about drugs in

21   some broad sense; he's not charged with drug trafficking.

22   He's, you know, supposedly guilty for associating with his

23   partner of two years, who is his life partner and the

24   mother of his child.  I mean, that's not really a basis to

25   detain him.  He's certainly allowed to be in a relationship
```

```
 1                        PROCEEDINGS                25
 2  with someone who is not charged in this case and who is not
 3  alleged to be a gang member.  And, of course, nor is
 4  Mr. Restituyo even alleged to be a gang member.  He's an
 5  associate.
 6            So that's why I say the allegations are getting,
 7  in some sense, vaguer and vaguer.  The fact remains he
 8  hasn't been charged with conduct since 2019.  I haven't
 9  heard Mr. Gentile in any of the times he's spoken accuse
10  him of committing any crimes since 2019.  There are
11  certainly co-defendants who have been accused with more
12  recent crimes in this indictment, so it's not simply
13  because there's been no information presented against
14  anyone since 2019.  That's not the case.
15            So, again, your Honor, we think he should be
16  released.
17            THE COURT:  Okay.  Thank you.  All right, just
18  give me another minute.
19            Okay, Mr. Restituyo, I've heard the arguments of
20  counsel here today, and I've considered the Pretrial Services
21  Report.  And I'm satisfied that there are conditions that I
22  can impose that will in combination reasonably assure your
23  appearance and the safety of other persons in the
24  community.  The conditions that I'm imposing are the least
25  restrictive conditions that I believe will satisfy my
```

1

2  inquiry.

3         You must post a bond in the amount of $75,000,

4  cosigned by two financially responsible persons.  Your

5  travel is restricted to the Southern and Eastern Districts

6  of New York.  You must surrender any travel documents and

7  make no new applications.

8         Mr. Gentile, do you know if the agents took his

9  passport when they arrested him or --

10         MR. GENTILE:  They did not, Judge.

11         MR. MARVINNY:  He's got one expired Dominican

12  passport that's at his mother's house, which --

13         THE COURT:  At his mother's house.

14         MR. MARVINNY:  Yeah.  He has no current -- any

15  current passport, and he doesn't have a US passport.  But

16  he can turn in the Dominican one.

17         THE COURT:  Okay.  You'll be subject to Pretrial

18  Services supervision as directed.

19         I'm going to place you initially on home

20  incarceration enforced by location monitoring because I

21  think that is, respectfully to defense counsel, I think

22  home incarceration is more strict and therefore safer for

23  both the community and less likely to result in the risk

24  of -- or increase the risk of flight.  Mr. Restituyo may

25  not possess a firearm, destructive device or other weapon.

```
 1                          PROCEEDINGS                    27
 2   I will order that he will be detained until the bracelet is
 3   installed, one person has cosigned the bond, and we have
 4   the passport.  Even though it's expired, I still think it's
 5   better if we have that.  In addition, Mr. Restituyo will be
 6   subject to drug testing and treatment as directed by
 7   Pretrial Services.  He must refrain from any contact with
 8   any known co-defendants, victims or witnesses, directly or
 9   indirectly, unless in the presence of counsel.
10            And I'm not including the employment conditions
11   that Pretrial recommended because I am putting him on home
12   incarceration.  So basically, he's not leaving the house
13   unless it's agreed with Pretrial Services basically to come
14   to Court or to meet with counsel or for some agreed medical
15   reason.  So let me stop there.
16            Mr. Gentile, are there any other conditions you'd
17   like me to consider?
18            MR. GENTILE:  No, your Honor.
19            THE COURT:  Okay.  Pretrial?
20            PRETRIAL SERVICES OFFICER:  No, your Honor.
21            THE COURT:  Okay.  Thank you.
22            Mr. Marvinny?
23            MR. MARVINNY:  No, thank you.
24            THE COURT:  Okay.  So I'll ask you first,
25   Mr. Restituyo, do you understand the conditions of your
```

release that I just read to you?

              THE DEFENDANT:  Yes.

              THE COURT:  Okay.  So let me just warn you,

though, Mr. Restituyo, that if you fail to appear in court

as required or if you violate any of the conditions of your

release, a warrant will be issued for your arrest; you and

anyone who signed the bond will each be responsible for

paying the full amount of $75,0000; and you may be charged

with the separate crime of bail-jumping, which can mean

additional jail time and/or a fine.  In addition, if you

commit a new offense while you're released, in addition to

the sentence prescribed for that offense, you'll be

sentenced to an additional term of imprisonment of not more

than ten years if the offense is a felony, or not more than

one year if the offense is a misdemeanor.  That term of

imprisonment will be executed after any other sentence is

completed.

              While you're awaiting trial I must also warn you

not to have any contact with or engage in any intimidation

of potential or designated witnesses or jurors, not to

engage in any intimidation of any court officer, and not to

engage in any conduct that would obstruct any investigation

by law enforcement.

              You do have the right to appeal my order.

```
 1                        PROCEEDINGS              29
 2              Do you understand all the warnings I've just given
 3  you, sir?
 4              THE DEFENDANT:  Yes.
 5              THE COURT:  Okay.  Now, it's very important that
 6  you comply with the conditions that I have set for you,
 7  which are strict and will be difficult for you -- it's
 8  going to make your life difficult, but it is much better
 9  than being detained.  But most importantly, very
10  importantly, the conditions of complying -- staying on home
11  incarceration, complying with the instructions of your
12  Pretrial Services officer, not having any contact with the
13  co-defendants in this case or any of the other Shooting
14  Boys, and not possessing any guns or other weapons.  Do you
15  understand?
16              THE DEFENDANT:  Yes.
17              THE COURT:  Okay, Mr. Gentile, anything further
18  from the government today, then?
19              MR. GENTILE:  No, your Honor.
20              THE COURT:  Okay, Mr. Marvinny?
21              MR. MARVINNY:  Nothing further.  Thank you.
22              THE COURT:  Okay.  Thank you.  Thank you very
23  much --
24              MR. GENTILE:  Oh, I'm sorry, your Honor.
25              THE COURT:  Exclude time?
```

```
 1                         PROCEEDINGS                  30

 2           MR. GENTILE:  Yes, the exclusion of time.

 3           THE COURT:  Okay.  I will note at this time.

 4   Thank you.

 5           All right.  Thank you.  Thank you, Mr. Restituyo.

 6   We're adjourned, everyone.

 7           (Whereupon, the matter is adjourned.)

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

31

C E R T I F I C A T E

        I, Carole Ludwig, certify that the foregoing

transcript of proceedings in the case of USA v. Restituyo,

Docket #22-cr-00192-JSR-8, was prepared using digital

transcription software and is a true and accurate record of

the proceedings.


Signature_____

                    Carole Ludwig

Date:     April 4, 2022