

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 8, 2023

**BY ECF**

Honorable Jed S. Rakoff
United States District Court Judge
Southern District of New York
500 Pearl St.
New York, NY 10007

    **Re:**    *United States* **v.** *Malvin Restituyo*, **22 Cr. 192 (JSR)**

Dear Judge Rakoff:

    The defendant in this case, Malvin Restituyo, is scheduled to be sentenced on August 15, 2023 at 4:00 p.m., having pled guilty to the transfer of ammunition to a prohibited person, in violation of Title 18, United States Code, Sections 922(d)(3), and 2. The Government submits this letter in advance of sentencing. For the reasons discussed further below, the Government respectfully submits that a sentence within the stipulated Guidelines range of 97 to 120 months' imprisonment (the "Stipulated Guidelines Range"), as calculated by the Probation Department in the Presentence Investigation Report ("PSR"), and agreed to by the parties, is warranted in this case.

**I.      Offense Conduct**

    The defendant is one of ten defendants to face charges in this case arising from his association with the Shooting Boys gang – a criminal organization based in the Bronx. (PSR ¶¶ 14-15). As has been previously recounted for the Court, the Shooting Boys have been engaged in acts of violence throughout the Bronx and Manhattan since 2017. (*Id.* ¶ 18). The gang and its associates deal drugs, use guns to shoot at members of rival gangs, commit robberies of rival drug dealers and members of the public, and protect their drug territory through violence. (*Id.* ¶ 17). The gang's violent conduct and use of firearms is facilitated by people – like the defendant – who sold or lent them guns to use in the numerous shootings and robberies in which they were involved.

    The Shooting Boys' main source of income came from both drug dealing and robberies. (PSR ¶ 28). Some of the robberies were committed against rival drug dealers while others involved individuals wearing high-end jewelry or riding motorized scooters. (*Id.* ¶ 19). The defendant, an associate of the Shooting Boys, committed robberies with the gang and provided gang members with access to the basement of a Bronx apartment building in which the defendant worked as a porter and had keys (the "Basement"). (*Id.* ¶ 24). The defendant allowed gang members to use the Basement as a meeting place and to store the motorcycles they used in committing crimes or stole from others. (*Id.*) The defendant also stored firearms in the Basement and provided the Shooting Boys with firearms on several occasions, including during a shooting on June 23, 2019

Hon. Jed S. Rakoff
August 8, 2023
Page 2 of 5

in which the defendant and three other Shooting Boys chased two rival gang members on motorized scooters. (*Id.*) One of the Shooting Boys, Andrew Done, shot both of the rival gang members (the "June 23 Shooting"). (*Id.*) One of the victims was shot in the upper left arm and the other in the left forearm. Fortunately, both survived.

Gang members would bring motorcycles they stole to the defendant, who purchased the vehicles from the gang and resold them for a profit. (*Id.* ¶ 25). The defendant also participated in motorcycle and E-bike robberies with members of the Shooting Boys and repaired the motorcycles the Shooting Boys used and stored in the Basement. (*Id.*)

The defendant's role in the affairs of the Shooting Boys enterprise was not limited to merely providing logistical support or access to firearms, he was an active participant in the gang's criminal acts as well. (*Id.* ¶ 26). For example, in the winter of 2019, the defendant and one other gang member committed at least two robberies – one of a motorcycle and the other of an E-bike. (*Id.*) On one occasion, the defendant kicked the driver of an E-bike off of the bicycle and drove it away. (*Id.*) On the second occasion, the defendant threatened the rider of a motorcycle with a knife and drove off with the vehicle. (*Id.*)

On or about July 6, 2019, the defendant gave a voluntary non-custodial statement to law enforcement describing the events surrounding the July 23 Shooting. In this version of events, the defendant denied providing or even seeing a firearm that day and denied being a members of the group who chased the two victims of that shooting. (USAO_016308). The defendant provided this version of events to a Bronx grand jury on July 9, 2019 after being issued a subpoena by the Bronx District Attorney's Office. (MPR_000010-27).

In February 2020, the defendant gave a post-arrest *Mirandized* statement to law enforcement in which he discussed his association with the Shooting Boys and provided a version of events surrounding the June 23 Shooting that was substantially different from the version he gave on July 6, 2019 and the version he gave in his testimony to the Bronx grand jury. This time the defendant told investigators that he participated in the plan to find and assault rival gang members and accompanied the group of Shooting Boys as they chased the victims. The defendant described how he watched Andrew Done shoot the victims and how he and the others escaped to the Basement after the shooting. However, the defendant failed to tell the interviewing officers that he was the one who provided the firearm Done used in the shooting. (USAO_016298).

## II.    Procedural History

On March 29, 2022, a grand jury in this district returned 22 Cr. 192 (JSR), a fifteen-count indictment (the "Indictment"), which charged the defendant in three counts. Count One charged Restituyo with racketeering conspiracy, in violation of Title 18, United States Code, Section 1962(d). Count Eight charged Restituyo with attempted murder and assault in aid of racketeering, in violation of Title 18, United States Code, Sections 1959(a)(3), (a)(5), and 2. Count Nine charged the defendant with knowingly using and carrying firearms in furtherance of a crime of violence, which was brandished and discharged, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i),(ii),(iii), and 2.

Hon. Jed S. Rakoff
August 8, 2023
Page 3 of 5

The defendant was arrested on March 31, 2022, presented before the Magistrate Judge on duty that same day, and released on bail subject to, among other conditions, home incarceration with location monitoring.[1]

On November 3, 2022, the defendant pled guilty, pursuant to a plea agreement with the Government, to a Superseding Information charging the defendant with one count of transferring ammunition to a prohibited person, in violation 18 U.S.C. §§ 922(d)(3), and 2.  Sentencing was originally scheduled for March 7, 2023.  On December 29, 2022, Pretrial Services received multiple tamper alerts from the defendant's monitoring device.  Those alerts were followed by alerts indicating that the tamper issue had been resolved.  Pretrial Services contacted the defendant that day and instructed him to report in person for a visual inspection of his device.  The defendant agreed to report but failed to show up.  Repeated attempts to contact the defendant proved unsuccessful.  The following morning Pretrial Services visited the defendant's residence where he his home incarceration was to be served.  The defendant was not at the residence and his girlfriend denied knowing of his whereabouts. Additional attempts to communicate with and locate the defendant were similarly unsuccessful.

The Court issued a warrant for the defendant's arrest on December 30, 2022.  Multiple attempts to locate and apprehend the defendant by members of both the New York City Police Department ("NYPD") and United States Marshals Service ("USMS")  proved unsuccessful.  The defendant was ultimately apprehended by NYPD uniformed personnel on June 11, 2023 when he was observed driving a stolen motorized scooter in an area of the Bronx approximately two miles from his reported residence.  The defendant was not in possession of his ankle monitoring bracelet at the time of his arrest.

On April 23, 2023, the Probation Department issued a revised PSR.  The defendant is being held responsible for transferring ammunition to a prohibited person, specifically Andrew Done. The defendant transferred the ammunition with the knowledge or intent that the ammunition would be used or possessed in connection with another offense, specifically the attempted murder of another – i.e., the June 23 Shooting.  (PSR ¶ 39).  Both the parties and Probation calculated a Guidelines Range of 97 to 120 months' imprisonment.  (PSR ¶¶ 2 and 98).

### III.    Applicable Law

As the Court is well aware, the Sentencing Guidelines still provide strong guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005).  Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 128 S. Ct. 586, 594 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 596.  After that calculation, however, the Court must consider the seven factors outlined in 18

---

[1] The defendant was fitted with an ankle monitoring device with radio frequency monitoring not the more comprehensive GPS monitoring.

Hon. Jed S. Rakoff
August 8, 2023
Page 4 of 5

U.S.C. § 3553(a), which include the nature and circumstances of the offense, the individual characteristics of the defendant, the need to adequately deter criminal conduct and promote respect for the law, and the need to provide restitution to victims. *Id.* at 50 & n.6.

## IV.    Discussion

### A.  A Sentence Within the Stipulated Guidelines Range Is Appropriate in this Case

In light of the need for the sentence to reflect the nature and seriousness of the offense, to afford adequate deterrence to this defendant, to promote respect for the law, and to protect the public from further crimes by the defendant, the Government respectfully submits that a sentence within the Stipulate Guidelines Range of 97 to 120 months imprisonment is sufficient, but not greater than necessary, to satisfy the purposes of sentencing. *See* 18 U.S.C. § 3553(a)

A sentence within the Stipulated Guidelines Range is necessary to reflect the seriousness of the defendant's conduct and to promote respect for the law, which the defendant appears to severely lack. The defendant is an associate of the Shooting Boys, a violent street gang. As part of his association with the gang, he provided the gang with a firearm that he knew would be used in the commission of another crime – in this case an attempted murder – and participated in robberies with other gang members. The Shooting Boys' penchant for gun violence was no secret—it's in their name. The defendant's possession of a firearm and transfer of that firearm to members of the Shooting Boys is indicative of what he was willing to do to assist and further the Shooting Boys' racketeering enterprise. Needless to say, this conduct is extremely serious and warrants a significant term of imprisonment. Moreover, the defendant, through his abscondence, has demonstrated a clear lack of respect for the law and disdain for this Court. The defendant's objection to Probation's use of the word abscond and his suggestion that there are other plausible explanations for his "disappearance," simply do not comport with the objective evidence:

- A  little over two months before the defendant was scheduled to be sentenced, Pretrial Services was alerted to the possible tampering of his monitoring bracelet. The defendant was instructed to report to Pretrial Services that same day, but failed to do so. Thereafter, the defendant stopped communicating with Pretrial;
- The defendant was not at his residence as required by the conditions of his release when Pretrial visited his home and conducted a home inspection the following day;
- The defendant was not at his home when law enforcement visited his residence multiple times in their attempts to enforce the Court's arrest warrant;
- Almost six months after the Court issued a warrant for his arrest, the defendant was arrested while driving a stolen motorbike less than two miles from the location where he was ordered to serve his home confinement; and
- The defendant's monitoring bracelet was no longer attached to his ankle when he was arrested.

These facts lead to one inexorable conclusion – i.e., the defendant removed his electronic monitoring bracelet in an attempt to avoid the consequences of his actions. A sentence within the Stipulated Guidelines Range reflects the serious nature of the defendant's conduct, promotes

Hon. Jed S. Rakoff
August 8, 2023
Page 5 of 5

respect for the law, and removes an associate of a violent street gang from the Bronx community that suffered through the plight of gang's violent acts for years.

A Stipulated Guidelines Sentence is also necessary to provide both specific and general deterrence.  Although the defendant has no prior convictions,[2] his apprehension on the Court's bench warrant came about as a result of the defendant's continued criminal conduct.  In fact, the defendant's arrest for driving a stolen motorcycle suggests that he was still engaging in the type of behavior that formed the basis of the original charges in this case.  And, as serious as the charges in this case are, they clearly failed to deter the defendant from continuing to engage in criminal conduct similar to that which brought him before the court. All of this suggests an inability or unwillingness to abide by the norms and rules of society.  A Stipulated Guidelines Sentence will hopefully deter the defendant from committing future crimes.

A Guidelines sentence is also necessary to achieve the goal of general deterrence.  Virtually all of the Shooting Boys were recruited at a young age when they were seduced by the prospect of easy money and the camaraderie of a gang.  Most are now only in their early to mid-twenties.  The defendant, however, is 34 years old and instead of encouraging the young gang members to get an education, work hard, and support a family, the defendant chose to engage in the gang lifestyle and to profit from the young gang members' criminal conduct.  A strong message needs to be sent to young people who may be seduced by that lifestyle that it is not glamorous or profitable; it is instead a path that results in serious consequences, including years spent in jail.

## V.    Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence within the Stipulated Guidelines Range of 97 to 120 months' imprisonment.

Very truly yours,

DAMIAN WILLIAMS
United States Attorney

by: _____
Dominic A. Gentile
James Ligtenberg
Assistant United States Attorneys
(212) 637-2567/2665

cc: Clay Kaminsky, Esq. (Via ECF and Email)

---

[2] The defendant's three previous arrests for minor charges related to marijuana possession.  On all three of those occasions, however, bench warrants had to be issued for the defendant's arrest to secure his appearance in court. (MPR_000001-8).